**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000661
15-JAN-2020
08:13 AM**

NO. CAAP-18-0000661

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

WB III, Plaintiff-Appellant,
v.
DB, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 99-1973)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

This case involves a dispute over child support obligations. Plaintiff-Appellant WB III (**Father**) appeals from the Amended Decision and Order entered by the Family Court of the First Circuit (**Family Court**)[1] on August 16, 2018. Father contends that the Family Court erred in (1) calculating his presumptive child support obligations under the Child Support Guidelines, (2) calculating the amount of downward departure due to exceptional circumstances, (3) ordering when his child support obligation terminates, and (4) ordering that his child support obligation be paid through the Child Support Enforcement Agency. We hold that the Family Court followed the proper procedure to calculate Father's presumptive child support obligation, correctly applied the law to find the existence of exceptional circumstances, and did not abuse its discretion in determining the amount of downward departure due to exceptional circumstances, ordering when Father's child support obligation will terminate, and ordering that Father's child support

---

[1] The Honorable Kevin A. Souza presided.

obligations be paid through the Child Support Enforcement Agency. Accordingly, we affirm the Amended Decision and Order.

## I.

Father and Defendant-Appellee DB (**Mother**) were parties to WB v. DB, No. 28613, 2009 WL 2329918 (Haw. App. July 30, 2009) (SDO) (the **First Appeal**), which was also a post-decree proceeding involving Father's child support obligations. Some of the background facts are taken from our summary disposition order in the First Appeal.

Father and Mother were married on October 17, 1995. They had three sons, one born in 1997 and twins born in 1999 (collectively, the **Children**). They separated in 1999 after the twins were born, and Father moved to Georgia. Their divorce decree was entered on December 19, 2001. Mother was awarded sole legal and physical custody of the Children. The decree provided that Father pay a total of $1,900 per month in child support, that Father's child support payment would be recalculated every year after July 1, 2002, based on Father's updated salary, and that Father's support obligation for each child would continue so long as the child continued his education after high school on a full-time basis at an accredited college or university or in a vocational or trade school, until the child's graduation or the child reached age 22, whichever occurred first. The divorce decree allowed Father to pay child support directly to Mother rather than by the usual income withholding through the Child Support Enforcement Agency.

Father voluntarily increased his child support payments to $2,000 per month in January 2002 and to $2,100 per month in 2003. In October 2005 Father moved to Washington and purchased a home. He remarried in August 2006 and has two adult stepchildren and one child with his current wife.

On November 21, 2006, Mother filed a motion for post-decree relief. Father filed his own motion for post-decree relief. After a trial, the Family Court[2] issued an order

---

[2] The Honorable Kenneth E. Enright presided.

modifying Father's child support obligation to $2,400 per month, to be paid through the Child Support Enforcement Agency. Mother appealed. We held that the Family Court "relied upon an erroneous factor (the parties' prior child support agreements) in determining the children's reasonable needs at the appropriate standard of living and thus abused its discretion in rendering its decision on Father's child support payment obligation." First Appeal at *5. We vacated the Family Court's order and remanded for further proceedings. Id.

On remand the Family Court[3] conducted a rehearing. On April 19, 2011, the court entered amended findings of fact and conclusions of law and ordered Father to pay child support of $2,400 per month ($800 per child), to "continue uninterrupted so long as said child continues his or her education post high school on a full-time basis at an accredited college or university, or in a vocational or trade school, or until said child attains the age of 23 years, whichever occurs first." Payments were to be made through the Child Support Enforcement Agency. Mother did not appeal from the order.

Mother filed another motion for post-decree relief on February 6, 2017. Mother claimed that Father failed to reimburse her for his share of the Children's uninsured health care expenses. The Family Court[4] conducted an extended hearing. On August 15, 2017, the court entered a decision ordering Father to reimburse Mother $1,877.75 for the Children's uninsured health care expenses. The court also ordered the parties to subscribe to the Our Family Wizard website to handle future reimbursement for the Children's uninsured health care expenses.

On September 20, 2017, Mother filed the motion for post-decree relief that is the subject of this appeal. The motion requested that Father's child support payments be increased to $6,300 per month ($2,100 per child). The Family Court conducted a trial on March 6, 2018.[5] The court stated:

---

[3] The Honorable Paul T. Murakami conducted the rehearing.

[4] The Honorable Dyan M. Medeiros presided.

[5] The Honorable Kevin A. Souza presided.

3

> THE COURT: [W]hat the case law specifies is really a . . . two-pronged analysis, and I'm speaking of the Matsunaga case[6] in particular.
>
> The first analysis is we need to determine what the appropriate standard of living is [using the Child Support Guidelines worksheet analysis] . . . . And then after the court makes that determination, . . . mother, who's the payee parent, and/or, in this case, because the children are adults as well, they need to then submit to the court -- and Matsunaga says in writing -- what their expenses would be under the appropriate standard of living as determined by the court . . . plus whatever their respective incomes are. And then at that point, [Father] would have the burden of proof to -- for any exceptional circumstances that they may or may not be claiming.
>
> That said, I'm not sure that that entire process can be done . . . with one court setting. I think what needs to happen is the . . . chief inquiry for today needs to be what's the appropriate standard of living, and the court needs to make a finding, and then we would need to recess for [Mother] and the boys to submit to me what their expenses would be under that appropriate standard of living as determined by the court, and then we would have to come back again for a second evidentiary hearing . . . to decide whether exceptional circumstances apply. Okay? And I say this . . . not because I'm trying to make the process any more tedious than it is. I say this because there have been too many cases that have gone on since Matsunaga where the appellate courts have sent it back and said you guys did it wrong, follow Matsunaga. Okay? That's what they've said. And so we're going to follow the process as laid out by Matsunaga, and if that's [sic] means we're going to have to bifurcate this process, that's what we're going to have to do.
>
> . . . .
>
> So for today, the inquiry is going to be what is the appropriate standard of living? And for that, I'm going to receive evidence from both parties as to their respective incomes, okay. And we are going to work through the child support and -- and any credits that father may ultimately be entitled to. And then we're going to work through the child support guidelines worksheet, and then I will hear arguments from both sides as to whether or not the worksheet number . . . [is] the appropriate standard of living or not. Again, the case law says that there's a presumption that it is. So [Father] would have to rebut that presumption. Otherwise, the court is probably going to say that's the appropriate standard of living.

(Footnote and underscoring added.) During the presentation of evidence, in response to a question from Mother (who was self-represented at the time), the Family Court reiterated:

> THE COURT: [L]et me just say this to both parties one more time. For the purposes of today, we are determining the parties' income and credits to . . . complete the child support guidelines work sheet, and then I will also hear

---

[6] Matsunaga v. Matsunaga, 99 Hawaiʻi 157, 53 P.3d 296 (App. 2002).

arguments as to the appropriate standard of living.  That's
what the <u>Matsunaga</u> case requires us to do initially.

(Underscoring added.)

On March 7, 2018, the Family Court entered an order
finding the appropriate standard of living to be $7,439 per
month, and ordering Mother to submit a statement on "if mother
were to receive the $7,439.00/month what would the monthly
expenses be for herself and the three children[.]"  The trial was
continued to June 19, 2018.  Mother's revised income and expense
statement was filed on March 27, 2018, in compliance with the
order.

At the start of the second day of trial on June 19,
2018, Mother's revised income and expense statement was received
by stipulation as Exhibit 40.  The Family Court reminded the
parties:

> THE COURT:  We are here for day two of what is slated
> to be a two-day trial.  The parties were initially in court
> for the first day of trial, I believe, on March 6th, at
> which time the court took evidence . . . as to the parties'
> incomes and other circumstances.  I made a[n] evidentiary
> finding as to the appropriate standard of living being what
> the guidelines worksheet yielded.  I believe what the case
> law mandated at that point was for the court to recess
> trial, and that's what the court did.
>
> I ordered, pursuant to the applicable case law,
> [Mother] to submit to the court a detailed . . . expense
> statement showing how her income plus the child support
> received . . . at the appropriate standard of living would
> be spent if they were paid and received by her.  So that
> said, the court is in receipt of a[n] income and expense
> statement from [Mother] filed on March 27, 2018[.]
>
> . . . .
>
> THE COURT:  Okay.  I believe the applicable procedure
> then would be . . . to allow perhaps [Mother] to briefly
> walk through and explain not so much the income side,
> because we know what that is . . . but the expenses in -- in
> Exhibit 40.  And then . . . I believe [Father] would then
> have the burden of proof under the applicable case law to
> prove that the stated expenses are unnecessary to fund the
> reasonable needs of the children at the appropriate standard
> of living.
>
> . . . .
>
> [FATHER'S COUNSEL]:  I think that's correct.

The Family Court heard testimony from both parties.  Written
closing arguments were filed on July 3, 2018.  Father argued that

his support obligation should be $1,795.21 per month. Mother argued that Father's support obligation should be $7,900 per month.

The Family Court entered a decision and order on July 16, 2018. Mother and Father both filed motions to reconsider, alter, or amend. The Family Court issued orders on both motions and entered the Amended Decision and Order on August 16, 2018. Father filed a timely notice of appeal. The Family Court entered findings of fact and conclusions of law pursuant to Rule 52(a) of the Hawai'i Family Court Rules and Rule 10(f) of the Hawai'i Rules of Appellate Procedure on November 27, 2018. The Family Court's completed Child Support Guidelines Worksheet was appended to the Amended Decision and Order and to the Findings of Fact and Conclusions of Law. The Family Court found, in relevant part:

> 10. **Child Support Guidelines Worksheet Calculation.** Based on the above, the Hawaii Child Support Guidelines Worksheet computes Father's monthly child support obligation to be $2,479.67 per child, per month, for a total sum of $7,439 per month. . . .
>
> 11. The Court finds that the Guidelines Worksheet calculation commands Father to pay monthly child support in the amount of $7,439.
>
> 12. **Past and Present Financial Circumstances of the Parties.** At the time of [the Family Court's] Order of April 19, 2011 setting child support at $2,400 per month, [the court] found that Mother received $593 per month in SSD benefits, and Father's salary and bonuses averaged $9,896 per month. Based on the credible and reliable evidence adduced at trial, the Court finds that Mother's present income remains quite meager — she continues to receive SSD benefits of $713 per month, and receives $750 each month from [Mother's mother], totaling $1,463 per month. On the other hand, Father's monthly gross income has more than doubled since 2011 — from $9,896 per month to $23,616 per month.
>
> 13. **Appropriate Standard of Living.** Based on the presumption created by the law, which Father has not adequately rebutted, as well as the past and present financial circumstances of the parties, the Court finds that the appropriate standard of living for the adult children is the total amount computed by the Guidelines Worksheet of $7,439 per month.
>
> . . . .
>
> 17. **Total Monthly Cost of Adult Children's Reasonable Needs at the Appropriate Standard of Living.** Based on the above analysis of Mother's proposed monthly expenses for the adult children, the Court finds that Mother's necessary total monthly cost of the adult

children's reasonable needs at the appropriate standard of living is $5,394.50 . . . . .

> 18. **Exceptional Circumstance Exists.** In this case, the Guidelines Worksheet computes Father's monthly child support obligation to be $7,439 per month. However, based on the above analysis, the Court finds that the adult children's reasonable needs at the appropriate standard of living is $5,394.50 (which is $2,044.50 <u>less</u> than the total amount computed by the Guidelines Worksheet). Consequently, Father has met his burden of proving that an exceptional circumstance exists, as the Guidelines Worksheet computation exceeds the reasonable needs of the adult children at the children's appropriate standard of living. Thus, the Court may deviate from the support amount calculated in the Guidelines Worksheet.

> . . . .

> 20. **Child Support Going Forward.** Effective September 20, 2017 (the date of the filing of Mother's Motion for Post Decree Relief) Father shall pay to Mother as and for the support, maintenance, and education of the adult children, the sum of $5,394.50 per month ($1,798.17 per adult child). . . . Child support shall continue uninterrupted (including during regular school and vacation periods) for each adult child until the age of 23, as long as the child continues his education post high school on a full-time basis at an accredited college or university, or in a vocational or trade school.

## II.

> [T]he family court possesses wide discretion in making its decisions and those decision [sic] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

<u>Fisher v. Fisher</u>, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

The family court's findings of fact are reviewed under the "clearly erroneous" standard. <u>Fisher</u>, 111 Hawai'i at 46, 137 P.3d at 360. A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding, or despite substantial evidence in support of the finding, we are nonetheless left with a definite and firm conviction that a mistake has been made. <u>Id.</u> "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. <u>Id.</u>

7

The family court's conclusions of law are reviewed de novo under the right/wrong standard. Matsunaga v. Matsunaga, 99 Hawai'i 157, 162, 53 P.3d 296, 300 (App. 2002). A conclusion of law which is supported by the family court's findings of fact which reflects an application of the correct rule of law will not be overturned. Id.

Decisions determining what is an exceptional circumstance authorizing a deviation from the Child Support Guidelines are conclusions of law reviewed de novo under the right/wrong standard of review. Child Support Enf't Agency v. Doe, 104 Hawai'i 449, 455, 91 P.3d 1092, 1098 (App. 2004). Decisions whether to order such deviations are discretionary decisions reviewed under the abuse of discretion standard of review. Id.

## III.

### Father's Support Obligation

Hawaii Revised Statutes (**HRS**) § 571-52.5 (2006) requires that the family court use the Child Support Guidelines to determine child support unless exceptional circumstances warrant departure. P.O. v. J.S., 139 Hawai'i 434, 442, 393 P.3d 986, 994 (2017). The party seeking an exceptional circumstances departure from the amount computed under the Child Support Guidelines has the burden of proof on both the existence of an exceptional circumstance warranting departure and the amount of the departure. Matsunaga, 99 Hawai'i at 167, 53 P.3d at 306. If the family court concludes that exceptional circumstances exist, it must make findings of fact with respect to both the support amount determined by the Guidelines Worksheet and the exceptional circumstance(s) that would justify deviation from this amount. P.O. v. J.S., 139 Hawai'i at 444, 393 P.3d at 996.

In this case, the Family Court followed the correct procedure by first deciding what Father's support obligation would be under the Child Support Guidelines Worksheet, then determining whether an exceptional circumstance existed to warrant a downward departure from the Guidelines support amount. Father's contention that the Family Court's "strict two-step approach was legally flawed" is without merit. P.O. v. J.S., 139

Hawai'i at 444, 393 P.3d at 996 (holding that even when exceptional circumstances exist within meaning of HRS § 571-52.5, family court is initially required to use the Guidelines Worksheet to determine the amount of the child support obligation). The case cited by Father in support of his argument for a "one step — or a unified analysis," Waldecker v. O'Scanlon, 137 Hawai'i 460, 375 P.3d 239 (2016), dealt with child custody, not child support, and is therefore inapposite.

Father contends that the Family Court's determination of the amount of support he owed was erroneous under the Child Support Guidelines. He argues that the Family Court undervalued Mother's income and resources because "monies she expended on herself and the three adult children that, at her highest estimate during these specific post-decree proceedings, exceeded $11,000.00 per month." That argument is without merit because it is based on Mother's revised income and expense statement, prepared after the court found the Guidelines amount to be $7,439 per month and ordered Mother to submit a statement showing "if mother were to receive the $7,439.00/month what would the monthly expenses be for herself and the three children[.]"

Father argues that the expenses he incurs to support his two adult stepsons and one minor son he has with his current wife should have been considered when calculating his support obligation under the Child Support Guidelines, citing HRS § 576D-7(a)(5)(2006).[7] The Guidelines provide:

---

[7]     HRS § 576D-7 provides, in relevant part:

    (a)    The family court, in consultation with the [child support enforcement] agency, shall establish guidelines to establish the amount of child support when an order for support is sought or being modified under this chapter. The guidelines shall be based on specific descriptive and numeric criteria and result in a computation of the support obligation.

    The guidelines may include consideration of the following:

        . . . .

    (5)    The existence of other dependents of the obligor parent[.]

> Support of Additional Children. When a Payor is supporting
> children in addition to the subject children, there may be
> an exceptional circumstance. The Payor bears the burden of
> proving the total number of additional children claimed for
> this exceptional circumstance. A sample Additional Children
> Request is attached as Appendix C-3.

2014 Hawai'i Child Support Guidelines at 9. During the first day of trial Father agreed that his obligation to support his adult stepsons and his child with his current wife should be considered in any deviation from the guideline amount based on exceptional circumstances. The record does not indicate that Father submitted an Additional Children Request to the Family Court.

The Child Support Guidelines "include among such exceptional circumstances 'a monthly income that would result in a computation higher than the reasonable needs of the children based on the relevant standard of living.'" Child Support Enf't Agency v. Doe, 98 Hawai'i 58, 65, 41 P.3d 720, 727 (App. 2001) (brackets omitted) (quoting Nabarrete v. Nabarrete, 86 Hawai'i 368, 371, 949 P.2d 208, 211 (App. 1997)). The Family Court found that such an exceptional circumstance existed, and reduced Father's monthly child support obligation by $2,044.50 — from $7,439 to $5,394.50 per month. Father argues that the deviation should have been greater by attacking Mother's credibility about her income, expenses, and financial resources. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher, 111 Hawai'i at 46, 137 P.3d at 360 (citation omitted).

The Family Court's findings of fact were supported by substantial evidence, and the Family Court applied the correct rules of law to the facts. The Family Court's determination of Father's support obligation is affirmed.

### Termination of Support Obligation

The Family Court ordered that:

> Child support shall continue uninterrupted (including during
> regular school and vacation periods) for each adult child
> until the age of 23, as long as the child continues his
> education post high school on a full-time basis at an
> accredited college or university, or in a vocational or
> trade school.

10

Father contends that the Family Court should have limited his support obligation to his adult sons' undergraduate education, citing Jaylo v. Jaylo, 125 Hawai'i 369, 262 P.3d 245 (2011). The issue presented in Jaylo was whether the family court was authorized "to order educational support for a disabled but competent child age 23 or older when the 2004 Family Court's Amended Child Support Guidelines . . . provided that such support may be continued only until the child attains the age of 23."[8] 125 Hawai'i at 370-71, 262 P.3d at 246-47. The supreme court held that the Child Support Guidelines "were intended to establish the amount of child support rather than to establish the child's eligibility for such support[,]" 125 Hawai'i at 375, 262 P.3d at 251 (emphasis in original), and ruled that the father of a visually-challenged 25-year-old full-time student was obligated to continue paying child support. The supreme court did not decide whether or not a parent's support obligation to an adult full-time student is limited to undergraduate-level education.

The Family Court did not order that Father pay for any of the Children's post-graduate education. In denying Father's motion to clarify his child support obligation, the Family Court stated:

> The Court notes that this [child support] provision mirrors the language that currently appears in the Judiciary-approved Divorce Decree Form (Form 1F-P-746; 12/27/2017) on the Hawaii Judiciary website. More importantly, this language is consistent with the applicable provisions of HRS 580-47(a), and Section III.A.2.a. of the 2014 Hawaii Child Support Guidelines (at page 11).

The Family Court did not abuse its discretion by conforming the language of its order to the requirements of the applicable statute and Child Support Guidelines.

---

[8] The 2014 Hawai'i Child Support Guidelines do not contain a specific age limitation. They provide:

> The [Family] Court . . . may order support for adult children who are presently enrolled as a full-time students [sic] in school or have been accepted into and plan to attend as full-time students for the next semester at a post-high school university, college or vocational school.

A footnote to the quoted provision cites Jaylo as authority. 2014 Hawai'i Child Support Guidelines, at 11 n. 17.

## Payment through Child Support Enforcement Agency

The Family Court ordered:

> 21. **Method of Child Support Payments.** All payments shall continue to be made payable to and through the State of Hawaii Child Support Enforcement Agency (CSEA) P.O. Box 1860, Honolulu, Hawaii 96801-1860, and pursuant to the Order of Income Withholding (OIW) which shall be prepared by the Court and filed concurrently with this Order. CSEA continues to be made a party to this matter for the limited issue of child support.

Citing no legal authority, Father contends that the Family Court should have allowed him to make support payments directly to his sons. HRS § 576D-10(e) (2016) provides:

> The court may approve an alternative arrangement for the direct payment of child support where either:
>
> (1) The obligor or custodial parent demonstrates and the court finds that there is good cause not to require immediate withholding; or
>
> (2) A written agreement is reached between the obligor and the custodial parent and signed by both parties;
>
> provided that in either case where child support has been ordered previously, an alternative arrangement for direct payment shall be approved only where the obligor provides proof of the timely payment of previously ordered support. For purposes of this section, good cause to approve an alternative arrangement shall be based upon a determination by the court, either in writing or on the record, that implementing income withholding <u>would not be in the best interests of the child</u>. Such a determination shall include a statement setting forth the basis of the court's conclusion.

(Underscoring added.) The parties' divorce decree, which approved an alternative arrangement, stated:

> The Court hereby approves an alternative arrangement, pursuant to H.R.S. 576D-10, for the direct payment of child support from the obligor to the custodial parent as an exception to the provisions for income withholding through the Child Support Enforcement Agency, as ordinarily required by Sections 571-52.2(a)(1), 571-52.3 and 576E-16(a), <u>Hawaii Revised Statutes</u>.
>
> The Court hereby approves the alternative arrangement for the direct payment of child support on the basis that either: (1) The obligor or custodial parent has demonstrated and the Court finds that there is good cause not to require immediate withholding; or (2) a written agreement has been reached between the obligor and the custodial parent and signed by both parties.

> For purposes of this section, the Court finds good cause to approve an alternative arrangement based upon its determination that implementing income withholding would not be in the best interests of the children, because of the fact that between themselves, the child support payments will actually arrive faster if paid directly rather than through an intermediary agency.

Father now argues that Mother is financially irresponsible, but his argument is again based upon Mother's revised income and expense statement filed on March 27, 2018, in compliance with the Family Court's order finding the appropriate standard of living to be $7,439 per month under the Child Support Guidelines Worksheet. Each of the Children submitted a declaration explaining that Father making payments through the Child Support Enforcement Agency <u>would</u> be in their best interests, because receiving payments directly from Father could jeopardize their continued eligibility for scholarships, grants, and other college financial aid. The Family Court did not abuse its discretion in ordering that Father make payments to the Child Support Enforcement Agency by income withholding.

**IV.**

Based upon the foregoing, we affirm the Amended Decision and Order entered by the Family Court of the First Circuit on August 16, 2018.

DATED: Honolulu, Hawaiʻi, January 15, 2020.

On the briefs:

Edward R. Lebb,
Rebecca A. Copeland,
for Plaintiff-Appellant.

Daniel M. Gluck,
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge

13